May it please the Court, my name is David Fine. I represent Far East Aluminium Works, the appellant in this case. The District Court here dismissed Far East's first complaint on a Rule 12b6 motion, and it did so with prejudice and without leave to amend. In dismissing, the District Court misconstrued relevant law, and in denying leave to amend, the District Court applied an incorrect standard and deprived Far East of the opportunity to cure any defects the District Court had found in that first iteration of the complaint. Far East asks this Court to vacate the dismissal or, at the least, to reverse the denial of leave to amend. While I would be very glad to address any issues, of course, that the Court has, I'd like to focus principally on four issues this morning, and otherwise to rely on our briefs for the remaining issues. First, the District Court erred in dismissing Far East's express warranty and breach of contract claims, based on its conclusion that all of Far East's damages were consequential. Second, the District Court correctly determined that the repair and replacement limitation fails of its essential purpose. Third, the District Court erred when it dismissed with prejudice and without leave to amend, when there had been no history of any sort of persistent pleading failures. And fourth, this Court should not alternatively affirm on the basis of the statute of limitations, as Virocon asks the Court to do. Let me turn first, if I might, Your Honors, to the question of the District Court's determination that all of Far East's damages were consequential, and that the disclaimer of consequential damages therefore doomed the express warranty and the breach of contract claims. First, I think it's important as a threshold matter to focus on something that the District Court itself focused on, which is this Court need not parse through all of the damages claims in this case to determine which ones are direct and which ones are consequential, because that's not what the District Judge did. The District Judge said there are no recoverable damages, and therefore, a necessary element of the breach of express warranty claim and the breach of contract claim could not be satisfied. If there's any recoverable damages, then that element is satisfied and the dismissal was inappropriate. And we contend that not only are there some recoverable damages, but in fact, all of Far East's damages are recoverable. Now, the Minnesota Supreme Court, in the Lester Building Systems case, explained that a buyer's out-of-pocket expenses to repair defective goods may be recovered as either direct damages for breach of warranty or as consequential damages. That's the most recent proclamation from the Minnesota Supreme Court on the issue. And to reach that holding, the Minnesota Court looked at a District Judge's opinion in the Northern District of Illinois. That's the IMI Norgren case, and that case is, I think, particularly instructive in this case. In that case, what the Court said was it drew a distinction. Direct damages are those that are directly involved in remedying the defect, in making the product what was promised, in meeting the expectations of the buyer. Consequential damages, on the other hand, are downstream damages. And I'll give, as an example, the most perhaps obvious of the consequential damages, lost profits. This case is about glass units that were installed at the Wynn Palace in Macau. Let us assume for the moment that because of the defects in almost 10 percent of those glass units, the resort wasn't able to open. And the Wynn Resorts sued my client and wanted lost profits. Well, that would be a classic consequential damage, because the lost profits doesn't make the lights not defective. It doesn't cure the defect. It cures a consequence of it. However, having to take the units out of the façade, replace the glass within, and then put the units back in is directly involved in curing the defect. Counsel, I guess my question is, why do we even need to go that far, given the very limiting language in the terms of sale and the warranty? It basically says, we'll pay for the glass and nothing else. Because, Your Honor, it's our position that there is, in fact, an express warranty that these products will be what they were said to be. And if they're not, that they would be replaced, repaired or replaced, or the payment price would be refunded. And that did not happen here, because as we pleaded, they didn't remove the units. We did, or at least our contractors did. They replaced the glass, but at the end of the day, that wasn't enough, because you can't replace the glass without removing the units. And you can't put them back into the façade without then replacing those units in the façade. So those are, in fact, direct damages. And therefore, we contend that under Minnesota law, the district judge erred in his contrary determination. Now, there's another issue related to the express warranty and the breach of contract claims, and that is the question of whether the repair and replacement limitation likewise bars those claims. And the answer is, no, they don't. And on this score, we agree with the district judge, who said that that limitation fails of its essential purpose because the cost to us of effecting the replacement greatly exceeds the cost of the glass itself. And there are cases that stand for just that proposition, that that is a basis under the Uniform Commercial Code for determining that a limitation fails of its essential purpose. I think, counsel, you're saying, if I'm reading you correctly, that you realize that you have to win on both of these first two issues. You have to say, yes, these are direct damages, and yes, it fails for its essential purpose. Am I reading your argument correctly? You are correct, Your Honor. And if we prevail on both of those points, then there's no hurdle to the express warranty and the breach of contract claims, other than potentially the statute of limitations. And I'll talk about that in just a few minutes. But for all of those reasons taken in combination, and Judge Strass, I think you're absolutely right. If we surmount the one issue, and if this Court agrees with Judge Doty on the second issue, then the Court should vacate the dismissal of those two counts of our complaint. Now, if I might, I'd like to turn to some of Virachon's responses to that argument. First, they say that somehow Fares was downstream of the actual repair and replacement, the removal of the units, the replacement of the glass, and the replacement of the units. But that's not the point. That's not how you define whether the damages are direct or consequential. You define that based on how proximate the damages are to the act of correcting the defect. It doesn't matter whether we hired a workman to do it, and then we paid the workman. It doesn't matter if there's a string of folks between us and that actual work. It's the type of damages that counts. So, let me turn to this case, the issue of the Judge's dismissal with prejudice and without leave to amend. This is a case in which the Judge issued one opinion that said, well I dismiss in part, but I deny in part. And there was some question about, well, what exactly does that mean? Because if you read it, it sort of looked like if he stood his ground, he was dismissing everything. And counsel for Virachon sent a letter to the Judge. And my partner sent a responsive letter to the Judge, and that letter said, well, we think you should reconsider finding that these are direct damages. But by the way, if you make any dismissal here, please make it without prejudice, and please allow us leave to amend. And specifically that letter from Far East's counsel called out one particular issue, and that was the unconscionability argument that we had lodged with respect to the implied warranty disclaimer. And the district judge had said that we had not adequately pleaded that Virachon was the only source in the world for these particular products, these particular glass panels. Now, we had pleaded that it was one, if not the only, in the world, so we think that we had adequately pleaded it, and that's what that letter to Judge Doty said. But it also said, by the way, Judge, if you will allow us leave to amend, we can plead what you say we didn't plead. We can say that they are the only source. And still the Judge then came back. He applied, number one, he dismissed with prejudice, which I would submit in this circuit is inappropriate in that setting. And number two, he denied leave to amend by applying a wrong standard. He said that that was somehow part and parcel of the reconsideration motion, and that, therefore, we had to prove exceptional circumstances. But there's no reason for that. This was at the beginning of the case. Rule 15a applies Fomen against Davis. Leave to amend is to be freely granted in the interests of justice. And he didn't apply that standard. So as this Court reviews that determination, while I will agree, certainly, that ordinarily denial of leave to amend is reviewed for abuse of discretion, in this case he applied the wrong standard, and that's a legal problem. Well, isn't when you apply the wrong law, isn't that abuse of discretion? Don't our cases already say that? It is. It is, Your Honor. But I guess my point, and I agree with you. I guess my point is to say we don't have to reach that high because your determination of whether a legal standard that the district court applies is right or wrong is a de novo standard of review. It's not how he applied a correct legal standard. He applied the wrong legal standard. And so at the very least, we would ask that this Court reverse and remand with instructions that the district judge allow us leave to amend and change any dismissal to be without prejudice. Now, the last thing that I'd like to address is the alternative basis for affirmance proffered by Vericon. It says, well, the statute of limitations takes care of this. Well, it doesn't for a couple of reasons. First of all, even Vericon itself acknowledges that some of our damages would survive even if it were correct that a two-year statute of limitations applies here because some of the defects were found in 2019. We filed the complaint in September of 2020. So no matter what, the statute of limitations could never be a basis for a wholesale affirmance. And in that case, the most forthright thing for this Court to do would be simply to say, that's an issue for the district judge to deal with on remand after you vacate the dismissal of the remaining claims and allow them to pursue that before the judge and on a full evidentiary record on summary judgment. That would be an appropriate way to deal with that. The other thing that I'll note is, as we argue in our reply brief, the proper interpretation of the statute is that that carve-out for products that are incorporated into an improvement to real property that makes it two years is when it causes injury to personal or real property. And in context, that means other property, not itself, not when it has its own defect. If it meant to say it is itself defective, it would have said that. But it says causes injury to personal or real property. So if one of these things had fallen off the palace and landed on a car, then if there were a claim about the car, we would say, well, that caused damage to personal property. So, Your Honors, for all of those reasons, we ask that the Court vacate the dismissal or at the least reverse and instruct the district judge to dismiss anything that he's dismissing without prejudice and with leave to amend and that any determination about the statute of limitations be left to the district judge on remand. And unless Your Honors have any questions for me, I'll reserve the balance of my time. Thank you. Thank you, Your Honors. Mr. Boyd. Good morning, Your Honors. Thomas Boyd here on behalf of Appellee Virocon, Inc. I'm joined today by my colleagues Kyle Kroll and Joe Wendler. Virocon respectfully requests the Court to affirm the district court's judgment for dismissal with prejudice. This appeal arises from a straightforward UCC sale of specialized goods between large, sophisticated businesses that was subject to express terms of sale that limit the seller's liability and the buyer's remedies to repair or replacement, exclude consequential damages, and expressly, specifically exclude recovery of any cost for removal or reinstallation, and disclaim all implied warranties. It's undisputed that Virocon has fulfilled all of its obligations to provide replacement goods pursuant to the terms of this limited remedy. Far East admits that Virocon has manufactured, shipped, and delivered over 1,600 replacement lights. Because Virocon has done so, it has fulfilled all of its obligations under the warranty, and there are no direct damages. Instead, Far East is entirely seeking to recover consequential damages, which are expressly excluded under the written terms of sale and the warranty. And again, that includes specifically recovery for costs of removal and reinstallation. Now, opposing counsel says those are direct damages, according to what the Minnesota Supreme Court has recently said. What's your response to that? A few responses. First of all, under Minnesota law, removal and reinstallation costs are not direct damages. The Lester case that counsel referred to, while it is the most recent case, had discussed the subject in dicta. I believe Justice Page indicated in a general way that repair costs could be consequential damages or direct damages, but never got to that issue. In fact, found that in that case those were consequential damages that could not be recovered. His reference or his citation to the Northern District of Illinois case is inapplicable in its entirety. That refers to and focuses on Illinois law, and that is unique. That interpretation of direct damages as possibly including removal or reinstallation costs is unique to Illinois. Does it make a difference, counsel, that this was a contract for the sale of goods only and not goods and services? It certainly does, Your Honor, and it's undisputed that this was solely a contract for goods. Again, as you had pointed out earlier, expressly excluded the recovery of installation and removal and reinstallation costs. Not only was it exclusively a sale for goods, but also expressly defined what could or could not be recovered. I was about to mention earlier Supreme Court jurisprudence that squarely addresses the issue, and that's the Clevin case, which was the transaction for goods in that case was the sale of herbicides, and the court held that while the difference between the herbicides as delivered versus those as warranted could be direct damages, everything else, including the application of the herbicide, was consequential damages. And Clevin continues to be the state of the law in Minnesota on that subject. So not only are these not consequential damages under Minnesota law, but they are also expressly excluded under the terms of the warranty. And as has been briefed and discussed by counsel, it's also our position that these were not direct damages incurred by Far East. Instead, they were the result of independent and separate contractual obligations that they entered into. And I would pause to make a point of that. Those were terms and contracts they negotiated with third parties. They're a sophisticated entity, and they had the opportunity to negotiate those terms, and they have to live with those. They can't foist limitations or obligations that they agreed to onto Viracom, just as they can't rewrite the terms of the contract with Viracom at this point. With regard to the argument that Judge Doty abused his discretion in not allowing Far East to amend its pleadings, Judge Doty did not prohibit them from seeking to amend. They mentioned an interest in amending their pleadings in a letter to the judge. The judge did not prohibit them from bringing a motion. The important facts here are they failed to bring a motion. They could have brought a motion to amend, and they didn't. More importantly, if they wished to seek some kind of proposed amendment, it was incumbent upon them to submit a proposed amended complaint, and they did not do so. Counsel, would that approach essentially require a party to file a motion for leave to amend any time a motion to dismiss is filed? No, Your Honor, it would not. In this case. To avoid the catch-22. It's not so much a catch-22, Your Honor. If during the briefing of a motion to dismiss, a party considers or makes an offer of proof or some kind of assertion to the court that they may be able to replead in a way that could save their claim, that may be appropriate. It's not appropriate to mention that after the fact in an offhanded way in a letter. And I would refer to this court's precedent in the Thomas case, which stated, quote, leave to amend shall be freely given when justice so requires, but the plaintiff must follow the proper procedures. And here, the local rules certainly lay out what those procedures are. This court has subsequently said the same thing in Novastar, Minneapolis Firefighters, and Drobodnik, that it's not a guessing game. If you believe you can assert a viable claim through a motion to amend, you have to take the formal steps to do so. And I don't think it's a catch-22. I think it's something that can be properly presented at any time during the briefing as a separate motion. And that's certainly what this court, the Eighth Circuit, has admonished parties to do. With regard to the dismissal, without prejudice, that's a matter of discretion. In this case, that was properly done. Even when reading the letter that Fari submitted, their description of the proposed allegations that they would add to a complaint regarding unconscionability would not save their claim. Essentially, they suggested they could provide additional claims that they checked around and couldn't find other sources for these lights. I question whether or not that's in fact true, but assuming they could allege that, they had already agreed to these specifications before they came to us. We didn't force those specifications on them. Again, large, sophisticated entity negotiated terms with a third party and then came to us. They can't allege that we foisted the warranty terms on them. Instead, we sent them a quote, and then they expressly included the quote. And this is in their allegations as well as in the documentation. They expressly incorporated the quote that said, terms of sale apply. So that was not foisted upon them. That was expressly adopted by them. With regard to whether or not the claim fails of its essential, or excuse me, whether or not the limited remedy fails of its essential purpose, it does not as a matter of law. Minnesota law states, and again, citing the Clevin case, where the product is a highly specialized good developed for specific purposes, it's reasonable for a seller to limit its liability to replacement of the goods. That's exactly what we did. Further, Minnesota law provides that a repair or replace clause does not fail of its essential purpose, so long as the repairs are made each time a defect arises. That's this court, the Eighth Circuit in the Transport case, and the Supreme Court of Minnesota in the Durfee case. It's undisputed we did exactly that. With regard to the statute of limitations, that is a very, very straightforward matter, and we rely on this court's case law. The statute itself clearly indicates that when building materials are incorporated in improvements to real property, a two-year statute applies. This court in the Bayside Holdings v. Virocon case, dealing with my client and my client's glass products, expressly held that that statute applies to these goods. I think that's as squarely applicable a case as you could find on almost any subject. It's the application of this statute of limitations as to our product as held by this court. And further, in the Integrity Floor Covering v. Brown-Newton case, 2008 Eighth Circuit case, the court expressly affirmed Judge Schultz's determination that windows are ordinary building materials. This court held that to be a reasonable interpretation of this statute. Thus, any alleged damages discovered prior to September 18, 2018, which is two years before this complaint was filed, is barred by the statute of limitations. I would go back to the beginning and reassert that all of the claims are barred by virtue of the limited warranty. But even if this court were to find otherwise, the statute of limitations most certainly limits anything beyond two years. I believe that's all I have, Your Honors. If there are no further questions. Well, I just have one question on the statute of limitations. There were some lights that ended up failing within the two-year period. Am I correct about that? And the statute of limitations wouldn't apply to those. Yes. I believe that's correct, Your Honor. Okay.  Anything else? Thank you very much. Thank you. I appreciate not having to look up at the microphone. Your Honors, I'd like briefly to correct just a few things that Mr. Boyd has suggested, some about the record and some about the cases. First of all, Leicester Building.  You see that it says, he tries to play down what the court said. What the court said, and this is at page 882 of 761 Northwest II, That's not dictum. That's what the justice said in the Minnesota Supreme Court case. Clevin, he says, Clevin demonstrates that it's just like this. In Clevin, the damages at issue were lost profits and cost of killing, which are classic consequential damages. Of course the court said that those were consequential damages. They had nothing to do with the kinds of damages asserted in this case. The other thing is that, yes, Your Honor. Is there such a difference in degree and kind for the lost income or the cost of reapplication of chemical to really restore the person to where they would have been? That in Clevin as opposed to the repair and replacement of the lights in this case? Your Honor, I think that's a closer call. But what I think the court in Clevin was referring to when it was discussing what are and are not consequential damages are lost profits and killing costs, which are a different. Yeah, I couldn't really tell exactly what the perceived claims were. I thought maybe the third one was in as well. And so I'm just not sure. Anyhow, I took your time. It's not the easiest opinion to follow. Your Honor, may I just. I'll give you another minute because I interrupted you. Go ahead. I appreciate that very much, Your Honor. On the question of the dismissal with prejudice and without leave to amend, Far East counsel wrote, Far East respectfully requests an opportunity to file an amended complaint to asserting relevant facts as identified by the court in its order. And it said those facts exist. He could not have been clearer. Now, Mr. Boyd says all counsel had to do was then file a motion for an amended complaint. How could he do that? The judge had just dismissed the case with prejudice. There was no case left in which to file an amended complaint. This was an error by the district judge. And at the very least, we asked the court to remedy it. The final thing that I'd like to note is that Mr. Boyd relies a lot on Clevin. And he says, well, Clevin talked about, well, sophisticated parties, complex equipment, this, that, and the other thing. And that's a theme that goes throughout a lot of Virocon's filings, which is to say it assumes things that are not in the pleadings. Now, maybe downstream after discovery, there will be a summary judgment motion and there will be a record. But there is not now. With that, Your Honors, unless there are any further questions from you all, I'd like to ask that you vacate the dismissal with prejudice, at the least reverse the denial of leave to amend. And I very much appreciate Your Honors' time and attention this morning. Thank you very much. The matter is taken under advisement and will reach a decision in due course. And I meant to say this on each of the cases. They were, in fact, all well briefed and well argued. And I usually say that. I just forgot. So that's it.